## 74436. THORNTON et al. v. ELLIS et al.
(363 SE2d 584)

Carley, Judge.

Appellant-plaintiff lessors filed this dispossessory action, alleging that appellee-defendant lessees were holding over pursuant to a five-year lease agreement which had expired according to its own terms. The case came on for jury trial. The evidence showed the existence of an addendum to the lease, denominated as an "attachment to lease agreement terms," to which the parties had agreed at some uncertain time and in which one of the provisions stated, in pertinent part: "Under paragraph 2 of the Lease Agreement the tenancy shall be for a period of five (5) years at the rate of $1500 (fifteen hundred dollars) per month with an option to renew at the expiration thereof." The trial court granted appellees' motion for a directed verdict, holding that, pursuant to the above-quoted provision, appellees had been given an option to renew on the same terms as those provided in the original lease and that appellees had exercised this option in a timely fashion. Appellants appeal from the grant of appellees' motion for a directed verdict and from the judgment subsequently entered in favor of appellees.

1. Appellants enumerate as error the grant of appellees' motion for directed verdict, urging that it was for the jury to determine whether or not the parties had intended that the exercise of the "option to renew" the lease would require the mutual agreement of all parties. The agreement in *Pause v. City of Atlanta*, 98 Ga. 92, 95 (26 SE 489) (1895) specifically provided that the option to extend the lease was to be "by mutual agreement of the lessor and lessee. . . ." It was held that such an "option was not to be exercised at [the tenant's] will alone, but was dependent likewise upon the concurrence of the landlord." *Pause v. City of Atlanta*, supra at 105 (6). However, the provision in the present case merely provides for "an option to renew at the expiration" of the five-year tenancy and does not explicitly state to whom the "option to renew" is given. Accordingly, the initial issue for resolution is whether the construction of such a general "option to renew" provision is a jury question.

"We commence our resolution of the issue by accepting as our basic premise that where no dispute of fact is involved, the construction of a plain and definite contract, if needed, is a matter of law for the court; a contract is not ambiguous even though difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties. [Cit.]" *Pisano v. Security Mgt. Co.*, 148 Ga. App. 567, 568 (251 SE2d 798) (1978). " 'As a general rule, in construing provisions relating to renewals, where there is any uncertainty, the tenant is favored, and not the

landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself.' [Cits.]" *Felder v. Oldham*, 199 Ga. 820, 826 (2) (35 SE2d 497) (1945). See also *Chalkley v. Ward*, 119 Ga. App. 227, 230 (1) (166 SE2d 748) (1969). Thus, insofar as the relevant provision in this case is silent with regard to who may exercise the option, it is to be construed most strongly against appellants, as the landlords, and most favorably for appellees, as the tenants. Accordingly, since the "option to renew" does not explicitly provide for mutual consent, it must be construed as exercisable at the unilateral option of appellees. This construction is consistent with *Pitman v. Griffeth*, 131 Ga. App. 489 (206 SE2d 115) (1974), wherein this court held that a provision which merely provided "For a Term of 5 years, Privilege to Renew This Leas [sic] (5 years)" was to be construed as giving to the tenant the unilateral right to renew the lease. "As study of the lease itself and [the cited] authorities resolves any possible ambiguity in the lease, it is not necessary to look to extrinsic circumstances . . . to determine the intent of the parties to the lease. [Cit.]" *Pitman v. Griffeth*, supra at 495-496. Accordingly, the trial court did not err in holding that the "option to renew" in the present case was to be exercised only by appellees.

The absence of any specific terms would not serve to render the option to renew unenforceably vague and the trial court's direction of a verdict erroneous. "The general rule is that where a lease for a stated period at a stated price contains an option of renewal which fails to specify either the duration of the new term or the amount of rent, the intendment is that the renewal applies to a new term of the same duration for the same rent, and the fact that the rental value has increased in the meantime is immaterial. [Cits.] The tenants having exercised their option to renew the lease by proper and timely notice, they are entitled to the occupancy of the premises for the additional five-year term." *Saunders v. Sasser*, 86 Ga. App. 499, 502 (1b) (71 SE2d 709) (1952). See also *Pitman v. Griffeth*, supra. Accordingly, the trial court did not err in holding that, as a matter of law, appellees' timely notice of their exercise of the option to renew resulted in a five-year extension of the tenancy on the same terms provided in the original lease.

Appellant also urges that it was for the jury to determine whether there existed any consideration for the "option to renew." The evidence shows, however, that the "option to renew" was only one of several provisions upon which appellees and appellants had reached agreement, which provisions represented the parties' mutual promises with regard to the lease of the premises. See generally OCGA § 13-3-42. See also *Turman v. Smarr*, 145 Ga. 312 (89 SE 214)

(1916). No jury question remained as to the existence of consideration for the "option to renew."

The provision constitutes a valid option to renew exercisable by appellees and the trial court did not err in granting appellees' motion for a directed verdict.

2. The trial court refused to allow appellants to amend their pleadings in order to raise issues which were in no way relevant to whether appellees were holding over. The trial court's ruling in this regard is enumerated as error.

"A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party." OCGA § 9-11-15 (a). Appellants submitted their amendments for the first time during the course of the jury trial. Appellant did not secure appellees' written consent to amend. The record clearly reveals that there was no abuse of the trial court's discretion in its refusal to allow appellants to amend their pleadings after the presentation of evidence had begun. See generally *Black v. Lowry*, 159 Ga. App. 57, 58 (1) (282 SE2d 700) (1981).

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 18, 1987.

*Harris C. Bostic*, for appellants.
*Harold Karp*, for appellees.